UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SCOTT BERGEMANN, et al.,
          Plaintiffs

    v.                                                  C.A. No. 09-150ML

THE STATE OF RHODE ISLAND, THE
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT, and FRANK T. CAPRIO
in his official capacity as
Treasurer of the State of Rhode Island,
          Defendants

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge.

This case represents the second effort by a group of Rhode Island Environmental Police Officers ("EPOs") to challenge certain wage practices by the Rhode Island Department of Environmental Management ("RIDEM") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219. Plaintiff Scott Bergemann and approximately 20 of the original plaintiffs from the first litigation in 1997, see Bergemann v. Rhode Island, 958 F. Supp. 61 (D.R.I. 1997), are joined by a new group of EPO plaintiffs in this suit. As before, the plaintiffs assert violations of the FLSA related to wage compensation, for which they seek damages and enjoinment of future violations. The case is now before this Court on the plaintiffs' motion to remand and the defendants' motion to dismiss Count I of the EPOs' complaint. For the reasons set forth herein, the plaintiffs' motion is DENIED, and the defendants' motion is GRANTED.

**Background**

On December 23, 2008, the plaintiffs, who are employed by RIDEM as law enforcement personnel, commenced legal action against the State of Rhode Island, RIDEM, and the State Treasurer in Rhode Island Superior Court, asserting (Count I) violation of the FLSA; (Count II) breach of contract; (Count III) violation of R.I. Gen. Laws § 36-8-1 et seq.;[1] and (Count IV) unjust enrichment. The plaintiffs alleged that (1) they receive no compensation for their daily thirty minute lunch periods, during which they are required "to monitor, address and respond to all calls for law enforcement duties," Complaint ¶ 47; and (2) the defendants have refused to include holiday pay in the plaintiffs' retirement contribution totals. Id. ¶ 67. The plaintiffs filed an amended complaint on February 9, 2009, but failed to serve it on the defendants.

In their answer to the original complaint, the defendants submitted that the plaintiffs "are in on-call status during their lunch breaks and are only required to respond in the event of an emergency," Answer ¶ 47. Defendants denied plaintiffs' assertion regarding the holiday pay. Id. ¶ 67. Further, the defendants asserted the affirmative defense of sovereign immunity as well as "the benefit of all expressed and implied exceptions to the waiver of sovereign immunity." Answer 11. Within days of filing their response, the defendants removed the case pursuant to 28 U.S.C. §

---

[1] This Statute addresses the administration of retirement systems for Rhode Island State employees.

1441(a), asserting federal question jurisdiction of this Court.

On April 24, 2009, the plaintiffs filed a motion to remand, in which they disputed this Court's subject matter jurisdiction. Specifically, the plaintiffs argued that the Eleventh Amendment protects the State from litigation in federal court without the State's consent, Pls.' Mot. 2, and that the Rhode Island Superior Court has jurisdiction over the case pursuant to 29 U.S.C. § 216(b).[2]  Id. at 3.  A footnote in plaintiffs' motion also suggested that defendants' removal of the case may have effected a waiver of immunity.  Pls.'s Mot. 3 n.2.  On May 1, 2009, the defendants filed their objection to the plaintiffs' motion to remand.  The defendants maintained that sovereign immunity under the Eleventh Amendment protected them from suit in state and federal court and stated that they "made a mindful, reasoned decision" to remove this FLSA action to Federal Court in order "to have Plaintiffs' Federal claim decided by a United States district judge." Defs.' Obj. Mot. Remand 2-3.

On May 4, 2009, while the plaintiffs' motion to remand was still pending, the defendants filed a motion to dismiss Count I of the original complaint on the grounds that this Court lacks subject matter jurisdiction over the FLSA claim and that the complaint fails to state a claim upon which relief can be granted. Defs.'

---

[2] Subsection 216(b) provides that an action to recover for FLSA violations related to minimum wage or maximum hours "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).

Mem. Mot. Dismiss 2. The defendants further asserted that "[t]he removal from State to Federal Court is of no consequence to the issue of the State's sovereign immunity." Id. at 3.

After a hearing on plaintiffs' motion for remand on June 11, 2009, the Court took the motion under advisement. Following the hearing, the Court conducted a conference with counsel in chambers. In the course of that conference, the Court asked counsel for the defendants to consider whether purposeful availment of the federal courts in order to establish lack of federal jurisdiction over the FLSA claim might be construed as the type of litigation conduct that could result in waiver of the defendants' sovereign immunity.

Pursuant to a mutual stipulation filed on June 24, 2009, the defendants accepted service of the first amended complaint and had until July 27, 2009 to answer or otherwise respond to plaintiffs' first amended complaint.[3] On July 27, 2009, the defendants filed a motion to dismiss Count I of the first amended complaint. As before, the State argues that the FLSA claim is barred by sovereign immunity, which is not waived by removal. Defs.' Mem. 3.

On September 3, 2009, the plaintiffs filed an objection to defendants' motion to dismiss. The plaintiffs argue that (1) the State's "voluntary invocation of federal jurisdiction" results in a waiver of its sovereign immunity; (2) the State has effectively adopted the FLSA through its wage and labor statutory scheme; and

---

[3] Although the first amended complaint was apparently served on the defendants at that time, it was not filed in this Court until December 10, 2009. The first amended complaint no longer asserts a breach of contract claim.

(3) under the principle of equitable estoppel, the State should be precluded from asserting sovereign immunity.

## Discussion

I. Standards of Review

A civil action filed in state court may be removed to a federal court if the case is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1447(c), the Court must grant a motion to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(d). Because the removal statute must be narrowly interpreted, any doubt should be resolved in favor of remand. Wilbert v. UNUM Life Ins. Co., 981 F. Supp. 61, 62-63 (D.R.I. 1997).

Rule 12(b)(1) provides for dismissal of an action for lack of federal subject matter jurisdiction. Because the subject matter jurisdiction of the federal courts is limited, courts are encouraged to resolve the jurisdictional issue before weighing the merits of a pending action. Morales Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002)("[A] court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action.").

A motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is subject to the same standard of review as a Rule 12(b)(1) motion. See e.g. Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). In a jurisdictional challenge, "[t]he party invoking federal court

jurisdiction bears the burden of proving its existence." <u>Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.</u>, 215 F.3d 195, 200 (1st Cir. 2000).

II.  Sovereign Immunity

A state's immunity from suit is a "fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." <u>Alden v. Maine</u>, 527 U.S. 706, 713, 119 S.Ct. 2240, 2246-47, 144 L.Ed.2d 636 (1999). In recognition of the States as sovereign entities in the federal system, the Eleventh Amendment provides that a state is immune from suit in federal court. <u>Alden</u>, 527 U.S. at 712-13, 119 S.Ct. at 2246. Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the amendment refers to citizens of <u>another</u> state, the Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her <u>own</u> citizens as well as by citizens of <u>another</u> State." <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974)(emphasis added).

There are two recognized exceptions to a state's immunity from suit under the Eleventh Amendment: "(1) Congress may abrogate a state's sovereign immunity through a statutory enactment, <u>see</u> <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 452-56, 96 S.Ct. 2666, 2669-71, 49 L.Ed.2d 614 (1976); and (2) a state may waive its immunity and agree to be sued in federal court, <u>see</u> <u>Atascadero</u>

State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985)." Close v. New York, 125 F.3d 31, 36 (2d Cir. 1997).

In order to abrogate a state's sovereign immunity, Congress must (1) "unequivocally express[] its intent to abrogate the immunity;" and (2) act "pursuant to a valid exercise of power." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996). On its part, a state's decision to waive its sovereign immunity must be voluntary. College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Board, 527 U.S. 666, 675, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999)("Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction . . . or else if the State makes a 'clear declaration' that it intends to submit itself to jurisdiction.")(internal citations omitted).

III. The Fair Labor Standards Act

The FLSA was enacted by Congress to provide regulation of minimum wage, maximum hour, and record keeping requirements. Mills v. Maine, 118 F.3d 37, 42 (1st Cir. 1997). The language of the FLSA indicates congressional intent to abrogate state immunity from private actions in federal court. See e.g., Subsection 203(d) of the FLSA, which includes "a public agency" in the definition of "Employer," against whom an FLSA action may be brought. 29 U.S.C. § 203(d). However, the Supreme Court has since established that, under the Eleventh Amendment, a state is immune from an FLSA action against it. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); Alden v. Maine, 527 U.S. 706,

712, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999)("[P]owers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts.").

IV. Waiver of Immunity

Although a state may waive its immunity and consent to suit in federal court, "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. v. Scanlon, 473 U.S. at 241, 105 S.Ct. 3142; R.I. Dep't of Envtl. Mgmt. v. Rhode Island ("RIDEM"), 304 F.3d 31, 46 (1st Cir. 2002). Consequently, a state will be deemed to have waived its immunity "'only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.'" Atascadero, 473 U.S. at 254, 105 S.Ct. at 3153 (quoting Edelman v. Jordan, 415 U.S. at 673, 94 S.Ct. at 1361).

In addition, the Supreme Court has held that a state's conduct during litigation may amount to a waiver of its Eleventh Amendment immunity. Lapides v. Bd. of Regents of the Univ. Sys. of Georgia, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). The plaintiff in Lapides brought suit against the Georgia university system for deprivation of his civil rights pursuant to 42 U.S.C. § 1983, and under the Georgia Tort Claims Act. The defendants removed the action to federal court and sought dismissal on the ground of Eleventh Amendment Immunity. Noting that a Section 1983 claim for money damages could not be asserted against the State and

had to be dismissed, the Supreme Court limited its holding to the state law tort claims. Because the Georgia Tort Claims Act waived sovereign immunity from state law proceedings in state court, the Supreme Court held that the state "<u>voluntarily</u> invoked the court's jurisdiction" when it removed the case to federal court. <u>Lapides v. Bd. of Regents of the Univ. Syst. of Georgia</u>, 535 U.S. at 624, 122 S.Ct. at 1646, 152 L.Ed.2d 806 (concluding that "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity"). In other words, <u>Lapides</u>, on which the plaintiffs rely, establishes waiver by litigation conduct (removal) where the State has waived its immunity to suit in its own court; it is, therefore, inapposite to the circumstances of this case. See <u>Steward v. North Carolina</u>, 393 F.3d 484, 488 (4th Cir. 2005)("<u>Lapides</u> addresses whether a state that removes an action to federal court having already consented to suit in its own courts can invoke Eleventh Amendment immunity; it does not resolve whether a state that has not consented to suit in its own courts maintains either the broader concept of sovereign immunity or Eleventh Amendment immunity upon voluntarily removing a case to federal court.").

Since <u>Lapides</u>, a number of Circuits have addressed whether removal results in waiver where the State's sovereign immunity from suit has not been waived or abrogated in state court; and whether such waiver applies to federal as well as state claims. The results have been conflicting. See e.g. <u>Lombardo v. Pennsylvania</u>, 540 F.3d 190 (3d Cir. 2008)(holding that, by removal, state waived

immunity from suit in federal court, but retained immunity from liability); Schrier v. Univ. of Colorado, 427 F.3d 1253 (10th Cir. 2005)(holding that "immunity is waived when a state entity facing suit in its own courts purposefully seeks a federal forum"); Omosegbon v. Wells, 335 F.3d 668 (7th Cir. 2003)(under controlling state law immunity rules, removal effected waiver where state court could have heard claims against state defendant); Embury v. Kin, 361 F.3d 562 (9th Cir. 2004) and Estes v. Wyoming Dep't of Transp., 302 F.3d 1200 (10th Cir. 2002) (both concluding that the principle set forth in Lapides applies to federal claims as well as state law claims).

The Fourth Circuit declined to find a waiver in the State's removal of a Section 1983 and various state tort claims where the State had not consented to suit in its own courts. Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005). The Court made a distinction between the broader state sovereign immunity that predates the Eleventh Amendment, and the narrower immunity from private suit filed in federal court that is bestowed upon the State by the Eleventh Amendment. Stewart, 393 F.3d at 488 ("Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states."). Lapides only addressed waiver of the narrow immunity provided by the Eleventh Amendment, not "the portability of sovereign immunity more generally." Stewart, 393 F.3d at 489. The Court noted that, unlike in Lapides, the State in Stewart did not attempt to achieve an unfair tactical advantage and "seek to

regain immunity that it had abandoned previously," id. at 490, and the removal, therefore, did not implicate "the judicial need to avoid inconsistency, anomaly, and unfairness." Id. Consequently, where the State would have been immune from suit in its own courts, removal did not effect a waiver. Id.

The Fifth Circuit disagreed and employed a very broad reading of Lapides in Meyers v. Texas, 410 F.3d 236 (5th Cir. 2005), on which the plaintiffs in the instant case rely. Pls.' Mem. 7-9. The Court in Meyers concluded that "Lapides's interpretation of the voluntary invocation principle, as including the waiver-by-removal rule, applies generally to any private suit which a state removes to federal court." Meyers, 410 F.3d at 242. The Court explained that it saw no reason to limit the principle to "only state-law claims in respect to which a state has waived immunity therefrom in state court." Id. Consequently, the Court held that Texas waived its immunity against an ADA claim and various state claims by removing the case to federal district court.

The First Circuit has not directly addressed the issue of whether a State defendant has waived its immunity by removing federal claims to federal district court when it had not consented be sued for such claims.[4] In an action brought by the State in

---

4

The case previously brought by a group of the same EPO plaintiffs is not instructive on the waiver by removal issue. In Bergemann v. Rhode Island, 958 F. Supp. 61 (D.R.I. 1997), this Court, in accepting Magistrate Judge Lovegreen's recommendation, held that the FLSA does not abrogate the Eleventh Amendment and that the Rhode Island Tort Claims Act does not constitute a waiver of immunity from suits involving traditional government activities. However, unlike in the instant case, the action was commenced in

federal district court to enjoin federal administrative proceedings, the First Circuit noted several distinctions between Lapides and the case before it and declined to find a waiver resulting from the State's litigation conduct. RIDEM v. United States, 304 F.3d at 49 ("Although it is something of a close question, we do not read Lapides to effect a waiver of Rhode Island's immunity in this case."). The Court noted that, unlike in Lapides, where the State defendant sought to "regain, by a change of forum, litigation advantage that the state [had] already renounced by a general statute," the State in RIDEM had "consistently asserted its sovereign immunity." RIDEM, 304 F.3d at 49. Although the Court acknowledged that waiver by litigation conduct was a well established principle in the circuit,[5] it held that, where Rhode Island was "undoubtably entitled to immunity" before it brought the action, finding waiver under those circumstances would not advance the policies that ordinarily motivate the rule governing voluntary invocations of federal

---

federal court by the plaintiffs, not removed by the State.

[5] The cases cited by RIDEM regarding that issue are distinguishable from the instant case. In Newfield House, Inc. v. Mass. Dep't of Pub. Welfare, 651 F.2d 32 (1st Cir. 1981), the State argued that the Eleventh Amendment did not bar federal jurisdiction and pressed a counterclaim in federal court. In Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17 (1st Cir. 2001), a bankruptcy code provision was deemed "a permissible means of obtaining a state's waiver of sovereign immunity." Finally, the defendant sewer authority in Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth., 744 F.2d 880, 886 (1st Cir. 1984) asserted immunity from federal jurisdiction in a contract rescission matter for which it could have been sued in state court. In addition, the Court expressed doubt that the defendant was an "alter ego" of the State.

jurisdiction - preventing inconsistency and unfairness. Id. at 49-50.

In a subsequent case, the First Circuit suggested in dicta that "a state may waive its immunity from substantive liability without waiving its immunity from suit in a federal forum." New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004). Distressed by the State's "exploitation of its sovereign immunity to obtain unfair litigation advantages," Taylor v. U.S. Dep't of Labor, 440 F.3d 1, 5 (1st Cir. 2005), the Court in Ramsey held that the State waived its jurisdictional immunity by seeking dismissal of the federal claim against it on exhaustion grounds, but retained its sovereign immunity from substantive liability for damages.

This Court follows the lead of the First Circuit by directing its focus on the policy behind voluntary invocation - the prevention of inconsistency and unfairness. See RIDEM, 304 F.3d 49-50. The Court is, therefore, disinclined to expand the ruling of Lapides, particularly in light of the stringent test for determining whether a state has waived its immunity from federal court jurisdiction. See Atascadero State Hosp. v. Scanlon, 473 U.S. at 241, 105 S.Ct. 3142. In the case now before the Court, it is indisputable that the State could have asserted immunity against the FLSA claim in both state and federal court. Consequently, a removal of the case to this Court creates no potential unfairness by re-establishing sovereign immunity that was previously surrendered. Moreover, a determination that removal effects waiver in this case would not serve to advance judicial consistency. The

State, in an identical FLSA case, would be entitled to assert sovereign immunity if the case were filed in federal court or if it remained in state court. Therefore, unless it is established that the State has subjected itself to an FLSA based claim in state court, removal of this case to federal court does not result in waiver of jurisdictional immunity.

V. Implied Waiver

The plaintiffs do not suggest that the State explicitly waived its sovereign immunity with respect to FLSA claims. Instead, the plaintiffs argue that the State has "effectively adopted the FLSA through its wage and labor statutory scheme," Pls.' Mem. 11, and point to various Rhode Island statutes governing labor and labor relations. The question of whether the enactment of Rhode Island labor statutes similar to the FLSA is sufficient to indicate a waiver of sovereign immunity was recently addressed in litigation brought by several employees of the Rhode Island Department of Corrections, who asserted lack of compensation for the off-duty care of police dogs. See Hauser v. Rhode Island Dep't of Corr., 640 F. Supp.2d 143, 145 (D.R.I. 2009). Noting that the state wage and labor scheme lacked express consent to be sued, Judge Smith concluded that "the simple enactment of wage provisions reflecting or mirroring the FLSA, without more, is too thin a reed on which to find clear waiver." Hauser, 640 F. Supp.2d at 149. This Court agrees. While there are similarities between the Rhode Island labor statutes and the FLSA, they do not constitute an "overwhelming implication" that the State has consented to a

private FLSA action in its own courts. <u>Atascadero</u>, 473 U.S. at 238-39, 105 S.Ct. at 3145-46. Without the State's explicit consent to be sued in its own court, however, its removal of this action is insufficient to waive the State's sovereign immunity. <u>See</u> <u>Lapides</u>, 535 U.S. at 617-618, 122 S.Ct. at 1643.

VI. Equitable Estoppel

Finally, the plaintiffs assert that "[e]quitable [e]stoppel demands the Court prohibit the State from taking advantage and benefiting [sic] from its own substantial wrong by asserting sovereign immunity." Pls.' Mem. 13. Specifically, the plaintiffs argue that the State's assertion of immunity allows it to "take advantage of a grave wrong - forcing law enforcement officers to work without compensation - without the opportunity for a full factual hearing and the opportunity for the Court to balance the equities." <u>Id.</u> 13-14.

The First Circuit defines equitable estoppel as "a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity." <u>Phelps v. FEMA</u>, 785 F.2d 13, 16 (1st Cir. 1986). The doctrine is invoked when "'one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it' acts to his or her detriment." <u>Id.</u> (quoting Restatement (Second) of Torts § 894(1)(1977)). In a suit against the government, a plaintiff must also establish affirmative misconduct on the part of the

government. Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 67 (1st Cir. 1999)("It is firmly settled that a party seeking to raise estoppel against the sovereign must, at the very least, demonstrate that government agents have been guilty of affirmative misconduct.").

According to the plaintiffs, RIDEM has induced the EPOs to work during their lunch periods in excess of their regular work hours "with the knowledge that the fully-applicable FLSA requires compensation for time at work, in service to the state." Pls.' Mem. 15. These allegations fit into an equitable estoppel scenario only if the EPOs were induced to work during their lunch breaks because the State misrepresented to them that they would be paid for those periods. The First Amended Complaint makes no such allegations, however. Instead, the parties apparently differ in their interpretation of certain FLSA provisions which govern the payment for mealtime periods. First Amended Complaint ¶¶ 52, 53. Under those circumstances, equitable estoppel is not implicated.

In sum, although the FLSA falls under the original jurisdiction of the federal courts, the State's sovereign immunity under the Eleventh Amendment precludes this Court's determining plaintiffs' FLSA claim. See Powelson v. United States, 150 F.3d 1103, 1104-05 (9th Cir. 1998)(summarizing the relationship between sovereign immunity and subject matter jurisdiction as follows: "Sovereign immunity is grounds for dismissal independent of subject matter jurisdiction. A statute may create subject matter jurisdiction yet not waive sovereign immunity").

The Court notes that this is the second time the State has removed a private FLSA action where it first "urg[es] federal question jurisdiction" and then seeks to dismiss the action for lack of subject matter jurisdiction. See Hauser v. Rhode Island Dep't of Corr., 640 F. Supp. 143, 145 (D.R.I. 2009). The Federal Rules of Civil Procedure are intended "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It is unclear why the defendants engage in such legal machinations to remove this case from the state court where it could have been adjudicated without such additional efforts at the taxpayers' expense.

## Conclusion

For the reasons set forth above, the plaintiffs' motion to remand the case is DENIED; and the defendants' motion to dismiss Count I of the complaint is GRANTED.

SO ORDERED.

*Mary M. Lisi*

Mary M. Lisi

December 16, 2009